UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JIMMIE STEPHEN,  
    Petitioner,  
    v.  
K. CHAPPELL, warden,  
    Respondent.

No. C 14-4927 SI (pr)

**ORDER OF DISMISSAL**

## INTRODUCTION

Jimmie Stephen, a prisoner incarcerated at San Quentin State Prison, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a disciplinary decision. A recent decision from the Ninth Circuit requires that this action be dismissed for lack of habeas jurisdiction.

## BACKGROUND

A rule violation report was issued on April 9, 2014, charging Stephen with "inciting a riot" or "delaying an officer." Docket # 1 at 5; Docket # 2-2 at 2. A disciplinary hearing was held on May 15, 2014; Stephen was found guilty of the "delaying an officer" and assessed a 61-day time-credit forfeiture as discipline. Docket # 2-2 at 4. Stephen allegedly filed an unsuccessful petition for writ of habeas corpus in the California Supreme Court to challenge the disciplinary decision. He then filed this action. His federal petition was liberally construed to assert a due process claim based on the alleged insufficiency of the evidence to support the

disciplinary decision and the alleged failure to call two of his four requested witnesses. *See* Docket # 6.

Stephen is currently incarcerated serving a sentence of 35 years to life in prison, Docket # 1 at 1-2; Docket # 13 at 8. That sentence was imposed on April 10, 1991 after he was convicted of murder. Docket # 13 at 8. He has not been found suitable for parole, as is evident from his statement that he unsuccessfully applied on July 18, 2014 to advance his parole hearing date. *See* Docket # 2-1 at 2; *see also* Docket #9 at 25 in *Stephen v. CDCR*, No. 15-1135 LB (alleging BPH improperly denied his petition to advance his next parole date); *see generally* Cal. Penal Code § 3041.5(d) (petitions to advance parole hearing dates).

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Ninth Circuit recently resolved some ambiguities as to when a prison disciplinary challenge had to be brought in a habeas action and when such a challenge had to be brought in a civil rights action. In *Nettles v. Grounds*, Ninth Cir. No. 12-16935 (9th Cir. May 28, 2015), the court held that "relief is available to a prisoner under the federal habeas statute only if success on the claim would 'necessarily spell speedier release' from custody, which *Skinner[v. Switzer*, 562 U.S. 521, 533-34 (2011)] suggested would include termination of custody, acceleration of the future date of release from custody, or reduction of the level of custody." *Nettles*, slip op. at 18. Earlier Ninth Circuit cases indicating "that the writ of habeas corpus may extend to claims that, if successful, would merely be likely to or have the potential to lead to a speedier release" were "superceded by the Supreme Court's rulings." *Id.* at 19. *Nettles* stands for the proposition that, to be cognizable in habeas, a claim has to necessarily accelerate release – not just likely or merely potentially accelerate release – from confinement if successful. *See id.* at 15, 18.

*Nettles* applied its necessarily-spells-speedier-release rule to an indeterminately-sentenced life prisoner who sought restoration of 30 days of lost time credits and expungement of the rule violation report that led to the loss of time credits. *See Nettles*, slip op. at 20. *Nettles* determined that habeas jurisdiction was not established because neither form of relief would necessarily

accelerate the prisoner's release from prison, or terminate his custody, or reduce his level of custody. *See id.* at 20-24. Significantly, it could not be determined that the restoration of time credits would necessarily affect the duration of the prisoner's confinement because he had not yet been found suitable for parole and it was unknown what his term would be if he was at some future date found suitable for parole. *Id.* at 23-24. "Without knowing how many years Nettles will serve before the Board finds him suitable for parole or the length of his base term, we cannot conclude that restoration of the lost good-time credits would *necessarily* affect the duration of Nettles's confinement if and when the Board finds him suitable for parole." *Id.* at 24. The court also rejected the argument that habeas jurisdiction existed because the expungement of the rule violation report would remove "roadblocks to parole" suitability; although the rule violation report "will likely have some effect on the Board's consideration, there is no basis for concluding that the expungement of this report from the record will 'necessarily spell speeder release'" or reduce his level of custody. *Id.* at 22.

Turning to the case at hand, the 60-day loss of credits imposed on Stephen in the disciplinary decision will not necessarily affect the duration of his confinement. Stephen is in the same situation as the *Nettles* plaintiff: he is an indeterminately sentenced prisoner not yet found suitable for parole and for whom a base term has not yet been set. It cannot be said that the removal of the rule violation report or the restoration of time credits will necessarily result in an earlier release date for Stephen. *See Nettles*, slip op. at 20-24. Habeas jurisdiction therefore is absent under the reasoning of *Nettles. Accord Hardney v. Virga*, 2015 WL 3648697 (E. D. Cal. June 10, 2015) (applying *Nettles* and recommending dismissal of habeas petition from life inmate challenging a loss of credits).

In theory, it should be possible for Stephen to file a civil rights action to challenge the prison disciplinary decision. There are some obstacles to such an action, which he should bear in mind in determining whether to spend the money to file a new civil rights action. First, his efforts to exhaust state court remedies may preclude a prisoner from litigating the same claims in a civil rights action because state habeas proceedings can have issue or claim preclusive effects on later § 1983 actions. *See Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1347 (9th

3

Cir.) (state habeas proceeding precludes identical issue from being relitigated in subsequent § 1983 action if state habeas court afforded full and fair opportunity for issue to be heard); *Gonzalez v. CDC*, 739 F.3d 1226, 1230 (9th Cir. 2014) (extending rule of *Silverton* to cover claim preclusion as well as issue preclusion). Second, Stephen almost certainly will have to pay the full $400.00 fee ($350.00 filing fee plus $50.00 administrative fee) if he files a civil rights action to challenge the disciplinary decision because he is subject to 28 U.S.C. § 1915(g)'s restriction on filings by prisoners who have had three or more prior cases dismissed on the grounds that they were malicious, frivolous, or failed to state a claim.

Although a district court may construe a habeas petition by a prisoner attacking the conditions of his confinement as pleading civil rights claims under 42 U.S.C. § 1983, *Wilwording v. Swenson*, 404 U.S. 249, 251 (1971), the court declines to do so here. The difficulty with construing a habeas petition as a civil rights complaint is that the two forms used by most prisoners request different information and much of the information necessary for a civil rights complaint is not included in the habeas petition filed here. Examples of the potential problems created by using the habeas petition form rather than the civil rights complaint form include the potential omission of intended defendants, potential failure to link each defendant to the claims, and potential absence of an adequate prayer for relief. Additionally, there is doubt whether the prisoner is willing to pay the civil action filing fee of $ 350.00 (plus a $50.00 administrative fee) rather than the $5.00 habeas filing fee to pursue his claims. The habeas versus civil rights distinction is not just a matter of using different pleading forms. A habeas action differs in many ways from a civil rights action: (1) a habeas petitioner has no right to a jury trial on his claims, (2) the court may be able to make credibility determinations based on the written submissions of the parties in a habeas action, (3) state court (rather than administrative) remedies must be exhausted for the claims in a habeas action, (4) the proper respondent in a habeas action is the warden in charge of the prison, but he or she might not be able to provide the desired relief when the prisoner is complaining about a condition of confinement, and (5) damages cannot be awarded in a habeas action. While a prisoner may think he has found a loophole that allows him to save hundreds of dollars – by filing a habeas petition

4

with a $5.00 fee rather than the usual $350.00 filing fee (plus $50.00 administrative fee) for a civil action – the loophole proves unhelpful because he ultimately cannot proceed in habeas and will be charged the regular civil action filing fee to challenge conditions of confinement.  It is not in the interest of judicial economy to allow prisoners to file civil rights actions on habeas forms because virtually every such case, including this one, will be defective and require additional court resources to deal with the problems created by the different filing fees and the absence of information on the habeas form.

## CONCLUSION

For the foregoing reasons, this action for a writ of habeas corpus is DISMISSED for lack of jurisdiction.  The dismissal is without prejudice to petitioner filing a civil rights action under 42 U.S.C. § 1983, preferably using the court's civil rights complaint form.  The clerk shall close the file.

IT IS SO ORDERED.

DATED: June 18, 2015

SUSAN ILLSTON
United States District Judge

5